United States District Court
District of Massachusetts

|  |  |
|---|---|
| MARK SOMMER,<br><br>      Plaintiff,<br><br>      v.<br><br>CLEANCHOICE ENERGY, INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>) 24-11844-NMG<br>)<br>)<br>)<br>) |

MEMORANDUM & ORDER

GORTON, J.

    This action arises out of the alleged breach of contract, deceptive marketing and unjust enrichment of an electric company. Plaintiff Mark Sommer ("Sommer" or "plaintiff"), on his own behalf and on behalf of others similarly situated, accuses CleanChoice Energy, Inc. ("CleanChoice" or "defendant") of taking advantage of the deregulated retail electricity market in Massachusetts by misrepresenting the source of its electricity and its methods for calculating monthly billing rates. Now pending before the Court is the motion of defendant to dismiss all counts for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 23).

I.  **Background**

A.  **Facts**

In the late 1990s, many states, including Massachusetts, deregulated their retail electricity markets, allowing consumers and small businesses to choose their energy supplier. This led to the establishment of independent energy service companies ("ESCOs"), including CleanChoice.

As with other ESCOs, CleanChoice serves as a "broker" on the energy market, buying electricity from producers at wholesale prices and then selling to customers for a profit. It neither generates its own energy nor delivers it to the end-user.

According to the complaint, Sommer signed up for CleanChoice's services in September, 2019. He had received direct mail advertisements from the company which included an enrollment authorization form ("the enrollment form") and a disclosure of the terms of service ("the terms sheet"). CleanChoice later sent him a welcome package with the contents of his contract ("the contract"). Sommer claims to have enrolled because, based on the representations CleanChoice made in the enrollment form, the terms sheet and the contract (collectively "the Sommer Materials"), he expected "to receive electricity "solely from renewable sources . . . at a reasonable cost."

According to Sommer, however, CleanChoice failed to follow through on either of those alleged promises, supplied him with energy from "brown," i.e., nonrenewable sources and charged him rates far above what was commercially reasonable. Contrary to the representations made in its marketing materials, CleanChoice purportedly purchased wholesale, nonrenewable electricity from the same sources used by non-independent ("non-ESCO") utility companies. CleanChoice is said to have then bought renewable energy credits ("RECs"), which represent the production of wind and solar energy by another entity, to offset the brown electricity. According to plaintiff, purchasing RECs to offset the use of brown electricity does not fulfill CleanChoice's promise to provide "100% clean energy" to its customers.

Sommer also alleges that CleanChoice consistently overcharged customers by billing at rates substantially above its supply costs. The terms sheet provides,

> A variable supply rate may vary each month and is based on a number of costs which may include, but are not limited to: energy, transmission, capacity, ancillary services, renewable energy certificates, RTO system fees and other factors, plus CleanChoice Energy operating costs, expenses, and margins. This list of factors is not exhaustive and no single factor will determine the rate.

Sommer claims that any reasonable customer, upon reading the terms sheet, would expect that defendant's variable rates would be "based on" its costs, i.e., would reflect the actual costs plus "a reasonable fixed margin." Instead, the rates

-3-

CleanChoice charged were allegedly "untethered from its costs to maximize its own profits."

Between July, 2020, and February, 2023, defendant's billing rates were consistently two to three times higher than those charged by Eversource and two to five times higher than average market supply costs. Plaintiff contends that 1) the data demonstrates CleanChoice engaged in price gouging, 2) given defendant's repackaging of electricity from brown sources, its costs should have been in line with those of non-ESCOs and therefore 3) CleanChoice's rates should not have substantially exceeded the market average.

More than three years after he initially signed up for CleanChoice, Sommer cancelled his account.

### B. Procedural History

In July, 2024, plaintiff filed a three-count complaint in this Court on his own behalf and on behalf of a class of all CleanChoice customers in Massachusetts from the earliest allowable date through the date of judgment pursuant to Fed.R.Civ.P. 23(b)(2) and (3).

Count I alleges breach of contract and breach of the implied covenant of good faith and fair dealing by CleanChoice for charging a higher monthly rate than the contractually required rate "based on a number of costs." Count II alleges that defendant violated the Massachusetts Consumer Protection

Act, M.G.L. c.93A ("Chapter 93A") by engaging in "deceptive acts or practices in the conduct of any trade or commerce. Count III alleges unjust enrichment in that plaintiff would not have purchased energy from defendant had he known the truth about the source of defendant's electricity and the reason for its above market rates.

Defendant now moves to dismiss all claims pursuant to Fed.R.Civ.P. 12(b)(6).

## II. **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). The reviewing court "may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556). Rather, the necessary "inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw." Id. at 13. The assessment is holistic:

> [T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez, 640 F.3d at 14).

### B. Application

#### 1. Breach of Contract

Plaintiff alleges that defendant charged monthly rates above the rate "based on a number of costs" specified in the terms sheet, constituting a breach of contract and a violation of the implied covenant of good faith.[1] Defendant counters that

---

[1] The breach of contract claim focuses exclusively on CleanChoice's variable rate setting and makes no reference to CleanChoice's representation regarding the source of its electricity.

the contract terms gave CleanChoice discretion to consider many factors beyond its costs to set rates.

To prevail on a breach of contract claim in Massachusetts, a plaintiff must demonstrate that:

> 1) a valid, binding contract existed, 2) the defendant breached the terms of the contract and 3) the plaintiffs sustained damages as a result of the breach.

Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 288 (D. Mass. 2009) (citing Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007)). Neither party disputes that they were in a contractual relationship, so the issue at hand is whether defendant's pricing practices could plausibly constitute a breach of contract.

The full provision at issue is quoted in full in the Facts section above. Although neither the Supreme Judicial Court of Massachusetts ("the SJC") nor the First Circuit Court of Appeals ("the First Circuit") has interpreted variable rate pricing language in ESCO contracts, courts in other jurisdictions have done so. In Brown v. Agway Energy Services, LLC, 822 F. App'x 100 (3d Cir. 2020), the Third Circuit Court of Appeals ("the Third Circuit") affirmed a district court's dismissal of a breach of contract claim because the contract terms clearly articulated that the ESCO "can base its prices on factors other than its cost of acquiring electricity." Id. at 103. There, the

plaintiff's contract stated that monthly rates were to be based on

> all of the costs incurred in providing service to customer, including the following: electricity acquired by Agway from all sources (including energy, capacity, settlement, ancillaries), transmission and distribution charges, ... other market-related charges, plus all applicable taxes including the gross receipts tax, fees, charges or other assessments and Agway's costs, expenses and margins.

Id. According to the Third Circuit, "the provision ma[de] clear that Agway can consider its own 'costs, expenses, and margins' in setting prices. " Id.  In Mirkin v. XOOM Energy, LLC, on the other hand, the Second Circuit Court of Appeals ("the Second Circuit") the plaintiff's contract with an ESCO provided,

> Your monthly variable rate is based on XOOM's actual and estimated supply costs, which may include but not be limited to prior period adjustments, inventory and balancing costs.

931 F.3d 173, 175 (2d Cir. 2019). As such, that Court found that plaintiff had asserted a viable breach of contract claim by alleging that XOOM did not base its rates on supply costs. Id. at 175-76. The contract terms in the instant case much more closely aligned with those in Agway than in Mirkin. The terms sheet states that factors beyond supply costs are factored into CleanChoice's monthly rates, specifically "operating costs, expenses and margins."

Plaintiff compares the language in the instant contract to that in Weinberg v. CleanChoice Energy, Inc., No. 23-cv-09685,

2024 WL 3446515 (S.D.N.Y. July 17, 2024), an unpublished case currently pending appeal before the Second Circuit. There, the district judge found that identical language, in the same CleanChoice contract, could plausibly form the basis of a breach of contract claim because, unlike the contracts in Agway, the terms do not specify that the variable rate pricing is up to the discretion of CleanChoice. Id. at *10.

This Court respectfully disagrees. Several representations made in the contract emphasize the discretion afforded to CleanChoice and the many variables, other than costs, that the company would consider when setting the variable rate. The contract specifies that the rates incorporate several factors, including "costs . . . plus CleanChoice energy operating costs, expenses, and margins." The described terms then double down, emphasizing that the list of factors provided is not exhaustive. Although the magic word "discretion" does not appear in the contract, no reasonable consumer can read the contract and assume otherwise. See Mass. Laborers' Health and Welfare Fund v. Blue Cross Blue Shield of Mass., 66 F.4th 307, 319 (1st Cir. 2023) ("[C]ourts have found discretion to exist if a contract contains broad language that affords a party flexibility in determining its course of action."); Gentile v. John Hancock Mut. Life Ins. Co., 951 F. Supp. 284, 290 (D. Mass. 1997) (rejecting the assertion that "magic words are required in order

-9-

for a company to grant itself . . . discretion," and instead judging whether, "on balance, the subject wording . . . clearly convey[s] independent and final discretion"). Similarly, the Sixth Circuit Court of Appeals found a defendant was afforded broad discretion to set billing rates where the contract stated that fees would be "reflected" in the amounts billed but

> nowhere . . . set forth the dollar amount . . . or even the method by which the . . . fee was to be calculated [and thus] in no way cabin[ed] [defendant's] discretion to charge or set" the fees.

Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield of Mich., 722 F.3d 861, 867 (6th Cir. 2013).

Nor would the terms of the contract cause a reasonable consumer to expect that the variable rates include a reasonable fixed margin. The terms indicate that the rate will be based on "a number of costs . . . plus CleanChoice Energy . . . margins." Plaintiff provides no explanation as to why it was reasonable for him to assume that CleanChoice would hold its margins static. As the United States Supreme Court has noted, corporations are profit-seeking institutions by nature and, therefore, should be expected to engage in profit-seeking behavior in the absence of "special circumstances." United States v. Falstaff Brewing Corp., 410 U.S. 526, 568 (1973) (Marshall, J., concurring). Without an express term freezing margins at a particular rate, there is no basis for a reasonable

customer to expect CleanChoice to eschew profit-seeking behavior.

Plaintiff separately alleges that defendant's actions violated the implied covenant of good faith and fair dealing by "unreasonably exercising its rate-setting discretion to price gouge" by charging rates above its actual costs plus a "commercially reasonable margin." Defendant counters that it had no obligation to charge a rate lower than that of a traditional utility or a rate based exclusively on its costs.

To plead a breach of the implied covenant, plaintiff must allege "unfair leveraging of the contract terms to secure undue economic advantage." Christensen v. Kingston Sch. Comm., 360 F.Supp.2d 212, 226 (D. Mass. 2005). A court need not find a breach of an express term of the contract to find a breach of the implied covenant. N. Am. Photon Infotech, Ltd. v. Acquia, Inc., No. 22-cv-12052-FDS, at *6 (D. Mass. Aug. 8, 2025) (citing Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 132 (D. Mass. 2005)). United States District Judge Dennis Saylor concisely explains the distinction:

> The essential inquiry [for a breach of the implied covenant] is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance.

Speakman, 367 F. Supp. 2d at 132.

-11-

Sommer has not sufficiently pled that defendant charged commercially unreasonable rates. Pursuant to the Court's findings above, the contract terms granted CleanChoice discretion with respect to the factors it considered when setting its variable rates. As such, "only an 'unreasonable' exercise of that discretion [would] violate[] the covenant." Robinson v. Spencer Stuart, Inc., 2015 WL 1273421, at *3 (D. Mass. 2015) (citing McAdams v. Mass. Mut. Life Ins. Co., 391 F.3d 287, 301 (1st Cir. 2004)).

Plaintiff, once again relying on Weinberg, insists that

> it is conceivable that a factfinder might conclude that the contract itself did not promise what Plaintiff expected but that, nevertheless, [d]efendant violated a "duty of good faith" that it owed less-informed consumers in providing something as universally necessary as utility services.

2024 WL 3446515 at *10 (citing Stanley v. Direct Energy Servs., LLC, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020)). The Court is unpersuaded. Unlike its representations regarding the source of its energy, information provided by CleanChoice about its variable rates plays no role, let alone a prominent one, in its marketing materials. The only source of information upon which a consumer could base any assumption about the variable rates is the terms sheet itself which, as the Court has already found, clearly emphasizes the degree of discretion afforded to CleanChoice. A reasonable consumer, well-informed or otherwise,

upon reading the terms, would not make the assumptions ascribed to plaintiff.

As such, the Court will allow the motion to dismiss as to Count I.

### 2. Chapter 93A

In Count II, plaintiff argues that defendant's non-transparent pricing and promises to provide renewable energy constitute "deceptive acts or practices," in violation of Chapter 93A. Defendant maintains that Sommer's claim is barred by the statute of limitations and, regardless, its statements were not deceptive within the meaning of Chapter 93A.

To prevail on a Chapter 93A claim, a plaintiff must demonstrate:

> 1) a deceptive act or practice on the part of the defendant, 2) an injury or loss suffered by the plaintiff and 3) a causal connection between the defendant's deceptive act or practice and the plaintiff's injury.

Gorbey ex rel. Maddox v. Am. J. of Obstetrics and Gynecology, 849 F. Supp. 2d 162, 259 (D. Mass. 2012) (citing Hershenow v. Enter. Rent-A-Car Co., 840 N.E.2d 526 (Mass. 2006)). Although the deceptive nature of particular acts is typically a question of fact, the "boundaries" of what may qualify for consideration as a Chapter 93A violation is a question of law. Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008).

Conduct is deceptive for Chapter 93A purposes if it is reasonable to find that the conduct could

> cause[] a person to act differently from the way he or she otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product).

Aspinall v. Phillip Morris Cos., 813 N.E.2d 476, 484 (Mass. 2004).

To begin with, conduct is considered unfair if it "attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce." Levings v. Forbes & Wallace, Inc., 396 N.E.2d 498, 504 (Mass. App. Ct. 1979) (Kass, J.); see also Monotype Imaging Inc. v. Deluxe Corp., 883 F. Supp. 2d 317, 322 (D. Mass. 2012) (Unfair conduct must "have an extortionate quality that gives the rancid flavor of unfairness, or fall within some common law, statutory, or otherwise established concept of unfairness, or rises to the level of immoral, unethical, oppressive, or unscrupulous.").

Here, plaintiff has not sufficiently pled a Chapter 93A claim with respect to CleanChoice's variable rates for the same reasons he fails to plead a breach of the implied covenant. Indeed, the standard for Chapter 93A is more stringent in that it requires "additional evidence of egregious conduct" from defendant. Fireman v. News Am. Marketing In-Store, Inc., No. 05-11740-MLW, 2009 WL 3080716, at *14 (D. Mass. Sept. 26, 2009)

(citing PH Grp. Ltd. v. Birch, 985 F.2d 649, 652 (1st Cir. 1993)).

With respect to the sources of energy supplied to consumers, defendant admits that it did not come exclusively from renewable sources but disagrees that its marketing was deceptive. Defendant refers to the following disclosure in its terms and conditions:

> You will not have electricity from a specific generation facility delivered directly to your service address, but CleanChoice Energy ensures that [the applicable percentage of] your electricity usage is matched by the generation of energy from national renewable resources on an annual basis.

That disclosure was, however, immediately preceded by the following:

> 100% of your electricity usage will be produced by wind and solar generation facilities. Electricity is the product of a mix of energy sources that is delivered over a system of wires.

Furthermore, in its responses to "Frequently Asked Questions About Switching to Clean Energy," CleanChoice represented that

> Eversource will still maintain the wires, prepare your bill and provide reliable service [and so] [t]he only thing that will change is the <u>electricity your home uses will be replenished by clean, renewable wind and solar sources supplied by CleanChoice Energy</u>.

Finally, in response to the question, "Where will the clean energy come from?", CleanChoice stated,

> When you choose clean energy . . . [we] will source wind and solar power from farms in your region. . . . CleanChoice Energy . . . offer[s] only 100% renewable energy.

The Court concludes that CleanChoice's advertising regarding the "clean" quality of its energy as compared to its true source, as revealed in the detailed terms and conditions, could be found by the finder of fact to be a deceptive practice within the meaning of Chapter 93A. Its representations that, <u>inter</u> <u>alia</u>, the electricity in consumers' homes would be "replenished by clean, renewable wind and solar sources" (1) may have misled customers who (2) read such representations in a reasonable manner and (3) considered such representations material. <u>Tomasella</u> v. <u>Nestlé USA, Inc.</u>, 962 F.3d 71, 72 (1st Cir. 2020).

Finally, defendant asserts that the Chapter 93A claim is barred by the four-year statute of limitations; but that assertion depends upon whether plaintiff's claims are tolled by the "continuing violation" doctrine, wherein

> [n]ew injury resulting from a previous 93A violation now barred by the statute of limitations "may constitute an unfair or deceptive practice subjecting [defendant] to liability."

<u>Merritt</u> v. <u>Tiernan</u>, No. 23-cv-509, 2024 WL 1856018, at *2 (D.R.I. Apr. 29, 2024) (quoting <u>Dwyer</u> v. <u>Barco Auto Leasing Corp.</u>, 903 F. Supp. 205, 211 (D. Mass. 1995)). Tolling of the statute of limitations is a close question that may or may not

be resolved during the course of discovery but it cannot be at the motion to dismiss stage.

The Court will therefore allow, in part, and deny, in part, defendant's motion to dismiss Count II. The claim will survive insofar as it alleges that CleanChoice's representations regarding the source of its energy violate Chapter 93A.

### 3. Unjust Enrichment

In Count III, plaintiff contends that defendant was unjustly enriched because he and the members of the proposed class would not have purchased energy from defendant had they known the true source of defendant's electricity and the reason for its above-market rates.

Although "Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment," plaintiffs can still plead this claim in the alternative. Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006). That is because Mass. R. Civ. P. 8(e)(2) permits a party to state as many separate claims or defenses as may be properly available, "regardless of consistency and whether based on legal or equitable grounds." Zelby Holdings, Inc. v. Videogenix, Inc., 82 N.E.3d 1067, 1073; see also Lass v. Bank of Am. N.A., 695 F.3d 129, 140 (1st Cir. 2012) (holding that "it is accepted practice to pursue both theories at the pleading stage").

In Massachusetts, a plaintiff may recover for unjust enrichment by showing that:

> 1) plaintiff conferred a benefit upon the defendant, 2) the defendant accepted that benefit and 3) the defendant's retention of the benefit would be inequitable without payment for its value.

<u>Mass. Eye & Ear Infirmary</u> v. <u>QLT Phototherapeutics, Inc.</u>, 552 F.3d 47, 57 (1st Cir. 2009). The benefit conferred upon the defendant "must be <u>unjust</u>, a quality that turns on the reasonable expectations of the parties." <u>Cmty. Builders, Inc. v. Indian Motorcycle Assocs.</u>, 692 N.E.2d 964, 979 (Mass. App. Ct. 1998) (emphasis in original).

With respect to CleanChoice's variable rate setting, the unjust enrichment claim fails for the same reason that the claim of the breach of the implied covenant fails, i.e., Sommer's expectations regarding the variable rates are not reasonable under the circumstances. Sommer does, however, plausibly allege that he reasonably expected the energy supplied to his home would come from renewable sources. Based on such reasonable expectations, he allegedly switched to CleanChoice as his energy supplier and paid their bills for more than three years.

As such, the Court will allow plaintiff to proceed on his claim of unjust enrichment insofar as it relates to the source of energy supplied.

ORDER

For the foregoing reasons, defendant's motion to dismiss (Docket No. 23) is

- with respect to Count I, **ALLOWED**;

- with respect to Counts II and III,

    - as to the source of the energy supplied by CleanChoice, **ALLOWED**; but

    - as to CleanChoice's variable rates, **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
Senior United States District Judge

Dated: September 9, 2025